ZEHMER, Judge
(Dissenting).
I would reverse the appealed order because the record fails to contain competent, substantial evidence to prove that the disabled adult suffered, or even probably suffered, any ill effects or injury from the appellant’s failure to check the patient’s level of dilantin in his blood during the period March 1986 to September 1987. I do not construe the statute involved in this case as embracing a person’s failure to follow some medical procedure that had no ill effect whatsoever on the adult’s health.
The disabled adult was admitted to the hospital in March 1986 for reasons other than seizures. During his stay, he suffered seizures and was treated accordingly. His dilantin blood level was determined to be slightly low, but it was at a satisfactory level when the adult was released from the hospital to appellant’s care. The disabled adult thereafter remained in the care of appellant’s facility until he was again admitted to the hospital in September 1987. At the time of his admission, his dilantin blood level was determined to be at a satisfactory level. Although the disabled adult suffered seizures in September, there is evidence that this may well have been due to cerebral vascular accident, not low dilan-tin blood level. There is no evidence that the disabled adult’s dilantin blood level ever was at an unsatisfactory level during the entire period from March 1986 until his admission to the hospital on September 7, 1987. There was no proof that the disabled adult failed to take his medication timely and in proper amounts during the entire period.[1] There was no proof that the adult suffered, or even probably suffered, any ill effects from the “act of neglect” charged against appellant. The fact that the adult suffered seizures after his admission to the *958 hospital on September 7, 1987, cannot, therefore, be attributed to appellant's failure to check his dilantin blood level at least once during the specified period. I would not construe the statute governing confirmed reports of “neglect” as embracing conduct that may constitute “neglect” in the abstract without any proof that such neglect caused or probably caused a disabled adult to suffer ill effects.
Moreover, I dispute the legality of holding appellant under a duty to make dilantin blood level tests at least once a year as a measure of prudent care under the statute. There is no statute or department rule imposing such duty. Instead, the department relies solely on the testimony of Dr. Leon-Barth to establish an annual test as the required minimum standard of prudent care within the meaning of the statute. However, Dr. Leon-Barth actually testified, not to a minimum standard of prudent care, but that “I think an optimum standard of care is to do it at least once a year.” (Emphasis added). Dr. Leon-Barth does not state that this optimim standard is a generally accepted practice in the medical profession, and is effectively nothing more than his own personal opinion that may or may not be recognized generally. Since nothing in the statute authorizes a finding of “neglect” for failure to provide optimum care, this testimony does not constitute competent, substantial evidence of a minimum statutory standard, and there is no reference to any statutory provision or rule that would place appellant on notice that he was required to perform tests for dilantin blood level at least annually.
I confess complete mystification at the department’s determination to pursue this neglect charge against appellant in the total absence of any harm caused or even probably caused the disabled adult due to appellant's failure to make at least one test during the eighteen month period. The department’s refusal to expunge this confirmed report of neglect stands the fundamental concept of due process on its head. The department’s refusal is erroneously based on an alleged violation of a standard of prudent care established only by the personal opinion of a physician expressed long after the occurrence in question, and that testimony is legally inadequate because it opines that annual tests are the optimum level of care required of persons in appellant’s position. There is no evidence that appellant was aware of this alleged requirement to test once a year, if it is in fact a requirement, and there is no statute or rule to put him on notice that it is a requirement. In short, appellant was not shown to have had reasonable notice of the standard professional conduct required by the department in this case. To subject appellant to the opprobrium that necessarily flows from the determination of “confirmed neglect” under these circumstances, especially when the disabled adult involved exhibited no symptoms of a sub-therapeutic level of dilantin and suffered no ill effects from the charged act of neglect, is wholly contrary to fundamental notions of fairness and is without legal foundation in the statutes relied on by the department.
The order should be reversed with directions to grant the request that the department’s determination be expunged from the records.

. In fact, the department's expert, Dr. Leon-Barth, testified on cross examination that when the disabled adult was admitted on September 7, 1987, for the seizure episode that triggered the HRS referral, he did not have a sub-therapeutic level of dilantin in his blood system. He also stated that based on reasonable medical certainty, it was probable that the disabled adult had taken the proper medication, dilantin and phenobarbital, for a period before the admission to the hospital, and he concluded that there was “no objective evidence in the records that he was not taking [the medication]."